**DOROTHY M. THOMPSON o/b/o**
**K.R. (a minor child),**

        **Plaintiff,**

**v.**                                **Case No.  8:07-cv-2317-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**
_____/

# O R D E R

The Plaintiff, on behalf of K.R., a minor child, seeks judicial review of the denial of her claim for child's Supplemental Security Income payments.  For the reasons set out herein, the decision is affirmed.

## I.

K.R., the claimant, was nine years of age and in the third grade at the time of his administrative hearing in April 2007.  Plaintiff, Dorothy Thompson, is K.R.'s adoptive mother.  Plaintiff protectively filed an application for child Supplemental Security Income payments on K.R.'s behalf in June 2004, alleging disability by reason of hyperactivity and a learning disability.  The Plaintiff's application was denied originally and on reconsideration.

Plaintiff then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  Plaintiff and K.R. were represented at the hearing by counsel and both Ms.

Thompson and K.R. testified. K.R. testified that he was presently in third grade and that he liked school. He stated that he likes his reading teacher, although he does not like to read, and he likes math and does well in that subject. While he does not write letters or use the computer at home, he uses the computer at school. By his account, he gets A's, B's, and C's, and had one D in reading. K.R. said that he goes to school before 8:00 a.m. and gets home at 3:15 p.m. He is driven to school in the morning and sometimes walks home. Once at home, he does his homework and sometimes needs help from his sister. After he does his homework, he takes a bath and watches television. He said he likes cartoons and movies. He also likes to play games, such as Play Station. K.R. said that he does not play outside. He indicated that, on occasion, he goes to a movie theater or the mall with his mother. K.R. stated that he does not help with cooking but he does have to take out the trash and clean his bathroom. He testified that he occasionally gets in trouble at home and in school for not doing what he is told. He sometimes gets punished for being lazy or when he does not listen. He said that he has to be told to do things more than once because he forgets, and at school he sometimes does not listen. He stated that he can pay attention at school at times, but at other times he does not finish things he starts. He did not know the name of his doctor. According to K.R., he sleeps well at night. He would like to play football when he is older and he likes playing basketball. He goes to church on Sundays. His uncle occasionally gives him a small amount of money which he spends at the store on cake. *See* (R. 338-357).

Plaintiff testified that she took K.R. into her family in 2003, and more recently, she formally adopted him. She has been with him on a daily basis for three years. By her account, K.R. does not understand, forgets things, and she has to tell him things over and over

2

and he still forgets. She said that K.R. gets notes sent home a couple of times each week about misbehaving in class; she described his conduct as not sitting down or talking out in class. However, she testified that he has never been suspended for his conduct. By her account, he simply cannot complete what he starts. He gets along okay with the other children in the family although he occasionally gets in "bad moods" and she can see a sad look on his face. She stated his most recent grades were C's or below. K.R. has a therapist and psychiatrist who indicate he suffers from attention deficit hyperactivity disorder ("ADHD"). He receives medication for the condition, but Plaintiff does not think it helps. He also takes a pill each night to help him sleep. He occasionally has nightmares in which he hears his dead grandmother talking to him. On occasion, Plaintiff has to punish K.R. when he does not do what she asks him to do or he messes up his clothes. The punishment consists of taking away the Play Station or television, and this helps for a time. She indicated that he plays basketball and football. She helps him with his homework on occasion, but finds he does not understand what he reads. (R. 358-366).

Also before the ALJ were school and medical records outlining K.R.'s history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of May 10, 2007, the ALJ found that, while K.R. has severe impairments related to attention deficit/hyperactivity disorder and affective disorder, the impairments, either singly or in combination, did not meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Pt.404, Subpt. P, Appendix 1. Upon these findings,

the ALJ concluded that K.R. was not disabled. (R 12-24). The Appeals Council Plaintiff's request for review.

II.

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, he must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.906. Under the applicable regulations, the Commissioner employs a three-step evaluation process. First, he determines whether the claimant is engaged in substantial gainful activity. If not, the next determination is whether the claimant has a severe impairment or combination of impairments. If so, the Commissioner must then determine whether the impairment or combination of impairments meet(s) *or* is medically *or* functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfies the duration requirement. Where the claimant fails to satisfy any of the criteria, he will be found not disabled. Where each of these requirements is satisfied, the claimant will be found disabled. 20 C.F.R. §§ 416.924-416.926a; *Wilson v. Apfel*, 179 F.3d 1276, 1277-78 n.1 (11th Cir. 1999).

On review, a determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

4

402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the

correct law and demonstrate that he has done so. While the court reviews the Commissioner's

decision with deference to the factual findings, no such deference is given to the legal

conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)

(citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve

conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233

(11th Cir. 1983).

As in all such appeals, the scope of review is limited to determining whether the

findings of the Commissioner are supported by substantial evidence and whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221

(11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred in his evaluation of the Plaintiff with respect to his ability to function in the are (sic) of attending to and completeing (sic) tasks; and

(2) The ALJ failed to fully and adequately develop the record.

By her first claim, Plaintiff argues that the record does not support the ALJ's finding that K.R. has a less than marked limitation in the functional area of attending and completing tasks.[1] According to Plaintiff, the medical evidence relied upon by the ALJ in reaching this conclusion is outdated and presents an inaccurate picture of K.R.'s limitation. In support, Plaintiff asserts that K.R. has recently had more difficulty and she points to notes from K.R.'s counselors/therapists in which the following were documented: GAF scores of 48 and 50 in July 2006; a GAF score of 49 in November 2006; a GAF score of 50 in January 2007; and K.R. being distracted and having difficulty paying attention.[2] Plaintiff faults the ALJ for impermissibly picking and relying on only those parts of the record which support his conclusions and ignoring evidence favorable to a finding of disability. She contends that the

---

[1]Plaintiff notes that, had the ALJ found a marked limitation in this area, K.R. would have been disabled based on functional equivalence.

[2]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV). A GAF of 41-50 indicates either "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job), and a GAF of 51 to 60 means "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). *Id.*

ALJ was obliged to discuss all the evaluations from 2006 and 2007 and, because he failed to do so, his conclusion is unsupported by substantial evidence. (Doc. 23 at 7-10).

In response, the Commissioner contends that the ALJ properly considered all of the evidence of record and relied on the opinions of the two state-agency psychologists. The Commissioner disputes Plaintiff's assertion that the records from 2006 and 2007 are inconsistent with the opinions of the state-agency psychologists. (Doc. 24 at 11-15).

The criteria for functional equivalence to a listing are set out in 20 C.F.R. § 416.926a. That regulation requires consideration of six domains, which are broad areas of functioning intended to capture all of what a child can and cannot do. 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or marked limitations in two of the domains.[3] *Id.* at § 416.926a(d). On this appeal, the only functional domain Plaintiff challenges is attending and completing tasks.

In determining K.R.'s functional limitations in the domain of attending and completing tasks, the ALJ specifically considered the opinions of the state-agency psychologists who reviewed K.R.'s file and completed Childhood Disability Forms in

---

[3]A "marked" limitation is defined as a limitation that interferes seriously with [the] ability to independently initiate, sustain, or complete activities, and is more than moderate. *See* 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is reserved for the worst limitations and is defined as a limitation that interferes very seriously with [the] ability to independently initiate, sustain, or complete activities, but does not necessarily mean a total lack or loss of ability to function. *Id.* at § 416.926a(e)(3)(i).

September 2004 and June 2005. (R. 20). Both of these psychologists opined that K.R. had less than a marked limitation in the domain of attending and completing tasks. (R. 267, 273). Additionally, the ALJ addressed the psychological assessment of K.R. completed by a psychologist in September 2004 upon request of the Department of Health-Division of Disability. (R. 20). That examiner noted that K.R. was cooperative and attentive, although he fidgeted frequently and was slightly impulsive during the end of testing. (R. 261). The ALJ also addressed a social worker's report dated January 2007, wherein K.R.'s teacher had informed her that while K.R. had been distracted, had difficulty sitting still, and was exhibiting poor impulse control, he was still scoring all A's in class. (R. 284). The ALJ noted further that (1) the school board had yet to remove K.R. from regular classes, (2) K.R. had never been suspended from school (which would indicate a severe problem), (3) K.R. had not been held back in school aside from one year in kindergarten, and (4) during the administrative hearing, K.R. was able to respond and maintain adequate attention. (R. 20).

Upon careful consideration of the record, I conclude these reasons provide substantial evidence on which the ALJ could rely in determining that K.R. had a less than marked limitation in attending and completing tasks. At the outset, I agree with Plaintiff that the psychiatric assessment in September 2004 and the reports of the state-agency psychologists in September 2004 and June 2005 were somewhat dated given the hearing occurred in April 2007. Nonetheless, the record does contain certain reports from 2005, 2006, and 2007, including progress notes from counselors and/or social workers and brief psychiatric assessments completed by the physician who managed K.R.'s medication. *See, e.g.* (R. 162-67, 184-86, 188-89, 192-93, 195, 197, 200-206, 210, 277-78, 292-325, 328-30).

These records are not inconsistent with the earlier dated records mentioned above. While Plaintiff is correct that the ALJ did not refer to each piece of record evidence, there is no rigid requirement that he do so. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Given the sheer number of brief progress notes from K.R.'s counselors, social workers, and doctors, the ALJ cannot be faulted for not addressing each one individually. As for Plaintiff's assertion that the ALJ impermissibly cherry-picked certain evidence, I disagree. Plaintiff fails to bolster or support this assertion by relying on a handful of selective notations from 2006 and 2007 records in which low GAF scores and attention difficulties were recorded. Of note, other treatment records exist during the same period of time in which GAF scores between 51 and 60 were reported. *See, e.g.* (R. 277-78, 280, 288-89, 305-06, 307-08, 310-12, 314-15). In any event, a low GAF score does not necessarily support Plaintiff's argument that K.R. had more than marked limitations in attending and completing tasks and was therefore disabled. *See, e.g., Seymore v. Apfel*, 131 F.3d 152, at *2 (10th Cir. 1997) (unpublished table decision) ("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work"); *accord Cox v. Apfel*, No. 99-2296-JWL, 2000 WL 1472729, at *9 (D. Kan. Feb. 24, 2000). To the extent Plaintiff relies on a few records in which it was reported that K.R. had increasing problems with paying attention, it is unclear who reported those instances. As noted by K.R.'s counselors and teachers, K.R. appeared to have much

less of a problem in this area than that reported by Plaintiff.[4] *See, e.g.* (R. 185, 204, 220, 226, 322). In sum, Plaintiff is not entitled to relief on this claim.

By her next claim, Plaintiff urges that the ALJ is duty bound to develop a full and fair record, which includes ordering a consultative evaluation if one is needed to make an informed decision. Here, Plaintiff summarily maintains that while the mere passage of time did not require updating the record by way of a consultative evaluation, the ALJ here did not have adequate updated information in order to reach a decision and thus was duty bound to order the same before rendering a decision. Plaintiff requests that this decision be reversed and remanded for the further development, i.e., obtaining a consultative evaluation and utilizing a medical advisor at a follow-up hearing. (Doc. 23 at 10-11).

The Commissioner counters that the record contained sufficient evidence for the ALJ to make an informed decision and thus the ALJ was not required to order a consultative evaluation. Additionally, the Commissioner cites to the regulations that specify that an ALJ has a duty to develop the record for the twelve months prior to the filing of the claim.[5] According to the Commissioner, the ALJ did this; the record contains evidence from at least March 2003. Moreover, the Commissioner notes that the record contains more recent evidence, including psychiatric assessments and notes from a social worker. Lastly, the Commissioner asserts that the Plaintiff has failed to demonstrate any prejudice in not having

---

[4]Implicit in the ALJ's decision is that he did not fully credit Plaintiff's testimony. Plaintiff does not allege that as error on the instant appeal.

[5]The Commissioner cites 20 C.F.R. § 416.912(d)(2), and *Ellison v. Barnhart*, 355 F.3d 1272 (11th Cir. 2003).

K.R. undergo a current mental consultative evaluation and counsel failed to request additional development of the record. (Doc. 24 at 15-17).

Plaintiff is undoubtedly correct that the ALJ has a basic duty to develop a full and fair record. *See Ellison*, 355 F.3d at 1276. This obligation exists whether or not the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). In light of this obligation, an ALJ must order a consultative examination when "such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); *see also Wilson*, 179 F.3d at 1278. However, it is the claimant's burden to prove that he is disabled and he is responsible for producing evidence in support of his claim. *See Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)). Furthermore, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered. *See Graham*, 129 F.3d at 1423. In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id.*

Under this standard, I conclude that further assessment was not necessary and that Plaintiff fails to demonstrate prejudice so as to warrant a remand. Initially, it is worth noting that neither Plaintiff nor her counsel requested that the ALJ obtain an updated evaluation of K.R.'s mental status. Nor did either complain to the ALJ about the adequacy of the record.[6] The firm representing Plaintiff on this appeal also represented her at the administrative level.

---

[6]Notably, neither Plaintiff nor her counsel submitted K.R.'s school records from 2005/2006 (second grade) or 2006/2007 (third grade).

Counsel undoubtedly was aware at that time of his right to request an updated evaluation or submit additional information. In these circumstances, Plaintiff's criticism of the ALJ must surely tempered by her own failure to act. In any event, after considering the record in its entirety, I conclude that the process employed by the ALJ in determining the functional limitations caused by Plaintiff's mental impairments was consistent with applicable regulations and case law and his conclusions are supported by substantial evidence. While an updated consultative evaluation may have proven helpful, I am unable to find that it was necessary to the ALJ's decision given that certain medical and counseling records from 2006 and January 2007 are included in the record.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 26th day of March 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record